# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Thomas & Wong General Contractor,
a Brunei Darussalam corporation,

                    Plaintiff,

          v.                                       **MEMORANDUM OPINION
                                                   AND ORDER**
                                                   Civ. No. 06-515 ADM/RLE
The Lake Bank, N.A.,
d/b/a The Lake Bank,

                    Defendant.

_____

Mark J. Kallenbach, Esq., Kallenbach Law Office, Minneapolis, MN, argued on behalf of
Plaintiff.

Stephanie A. Ball, Esq., Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, MN, argued on
behalf of Defendant.

_____

## I. INTRODUCTION

On September 1, 2009, the undersigned United States District Judge heard oral argument

on Plaintiff Thomas & Wong General Contractor's ("Thomas & Wong") Second Motion for

Summary Judgment, or in the Alternative for Partial Summary Judgment [Docket No. 119] and

Defendant The Lake Bank, N.A.'s ("Lake Bank") Motion for Summary Judgment [Docket No.

113].[1] For the reasons set forth below, Thomas & Wong's Motion is denied, and Lake Bank's

---

[1] The Court previously granted summary judgment to Lake Bank after determining the
alleged agreement at issue (the "Collateral Transfer Agreement") is a credit agreement that fails
to satisfy Minnesota's credit agreement statute of frauds. See Mem. Opinion and Order, Dec. 21,
2007 [Docket No. 95] at 10-14; Minn. Stat. § 513.33. On appeal, the Eighth Circuit Court of
Appeals reversed and remanded, holding that although the Collateral Transfer Agreement falls
within the definition of a credit agreement under Minn. Stat. § 513.33, the statute of frauds is
only triggered if the suit is brought by a debtor. Thomas & Wong v. The Lake Bank, N.A., No.
08-1213 (8th Cir. Jan. 23, 2009) [Docket No 101] at 4-5. Because Thomas & Wong was found
not to be a debtor with respect to the Collateral Transfer Agreement, the suit is not barred by the
Minnesota's credit agreement statute of frauds. Id. at 5.

Motion is granted in part and denied in part.

## II. BACKGROUND[2]

This dispute centers on an alleged agreement (the "Collateral Transfer Agreement")
between Lake Bank and Thomas & Wong entered into as part of a refinancing arrangement
involving Thomas & Wong, Lake Bank, and Beardmore Investments, Inc. ("Beardmore
Investments").

### A. The Refinancing Arrangements

Beginning in 1999, Lake Bank made loans to Beardmore Investments secured by
collateral (the "Beardmore Investments Collateral" or "Collateral") owned by John Beardmore
("Beardmore"). Beardmore Aff., [Docket No. 66] ¶¶ 8, 13. Beardmore was the president, a
director, and sole shareholder of Beardmore Investments and BDV Investments, Inc. ("BDV").
Id. ¶¶ 3, 5. As of January 17, 2003, Beardmore Investments owed $570,505 to Lake Bank. Id.
Ex. A. The Beardmore Investments Collateral securing the indebtedness consisted of the
following: a second mortgage on Beardmore's Arizona home ("the Arizona real property"); a
1999 Mercedes and a 2000 18-foot Mystic Ski Boat with a Shorestation and lift ("the Personal
Property"); a 22% interest in Founders Mezzanine Stock Fund (the "Founders stock") together
with dividends of $7,000; and shares of Superior Financial Holdings, Inc. stock (the "Superior
stock"). Id. ¶ 13.

Lake Bank's interest in the Beardmore Investments Collateral was evidenced by
documents (the "Collateral Documents") held by Lake Bank. See Haugan Aff., [Docket No. 72]

---

[2] On a motion for summary judgment, the Court views the evidence in the light most
favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). As
both parties have moved for summary judgment, disputed facts are noted.

Ex. 12.  The Collateral Documents were a certificate of title referencing a 1999 Mercedes; a State of Minnesota UCC-1 Financing Statement for a motorboat, trailer, and boat lift; a State of Minnesota certificate of title for a 2000 Ebbtide fiberglass boat; an Assignment and Control Agreement relating to the Founders Mezzanine stock; and a stock certificate representing Beardmore's ownership of 200,000 shares of common stock in Superior Financial Holding Corporation.  Id.

Early in 2003, Beardmore informed Lake Bank that he was negotiating a financing package with Thomas & Wong, and that a portion of the anticipated loan proceeds from Thomas & Wong would be used to pay Beardmore Investments' debt to Lake Bank.  Beardmore Aff., ¶¶ 10, 14.  Beardmore avers that he orally instructed Lake Bank's president, Thomas Kell ("Kell"), that upon payment of the Beardmore Investments' loans with Lake Bank, Lake Bank was to assign the Beardmore Investments Collateral to Thomas & Wong.  Id. ¶¶ 14-15.  Kell denies that Beardmore instructed him to assign the Collateral to Thomas & Wong.  Second Kell Aff., [Docket No. 134] at ¶ 9.  To the contrary, Kell avers that Beardmore instructed him to retain the Beardmore Collateral and evidence of the Collateral.  Id.

## B.  The Thomas & Wong Note

On March 6, 2003, BDV and Thomas & Wong entered into a Promissory Note (the "Thomas & Wong Note" or "Note") whereby Thomas & Wong loaned BDV $1,500,000.  Beardmore Aff., Ex. C.  The Thomas & Wong Note was "in all things secured by precious metals described on the [Note's] attached Exhibit A" as six containers of precious metal doré located in Lordsburg, New Mexico."  Id.   The metal doré was valued at fifty million dollars.  Ball Aff., [Docket No. 116] Ex. 7 at ¶ 24.  The Thomas & Wong Note specified that proceeds

from the loan would:

> be used by BDV to purchase the position of The Lake Bank, N.A. of Two Harbors, Minnesota and the (sic) purchase of certain real property describe (sic) as 660 North Second Street, Minneapolis, Minnesota under the terms of a Promissory Note attached as Attachment A, which assets collateralizing the current loan at The Lake Bank will be assigned to BDV.

Beardmore Aff., Ex. C. No "Attachment A" accompanies the Note produced by Thomas & Wong in its pleadings. See Compl., [Docket No. 1] Ex. A. Lake Bank was not a party to the Thomas & Wong Note. See id. The Thomas & Wong Note further stated that "this Promissory Note is executed in reliance on the attached Opinion Letter of Counsel (Attachment B)." Id. No "Attachment B" accompanies the Note. See id.

In April, 2003, Thomas & Wong wired three payments totaling $700,000.00 to Beardmore's account at Lake Bank. Fifth Kallenbach Aff., [Docket No. 128] Ex. B. The wire instructions include an advisement to mark the transfer as "Payment for Properties [I]nvestment Loan." Id.

**C. The Collateral Transfer Agreement**

Thomas & Wong avers that on March 12, 2003, its agents Edward Tarapaski ("Tarapaski") and Jan Wallace ("Wallace") arranged by a phone conversation with Lake Bank's Kell for Thomas & Wong's payment of Beardmore Investments' indebtedness to Lake Bank in exchange for Lake Bank's assignment of the Beardmore Investments Collateral to Thomas and Wong. Tarapaski Aff., [Docket No. 86] ¶ 9. When Kell asked if Thomas & Wong "would send the money right away," Wallace responded that Thomas & Wong "needed something in writing from the Lake Bank to verify the collateral and that the collateral would be transferred to Thomas & Wong upon receipt of the funds." Id. Kell avers that he does not recall the

conversation.  Sixth Kallenbach Aff., [Docket No. 137] Ex. I at 79-81.

Later that morning, Wallace received a faxed letter purporting to be from Lake Bank

entitled "Collateral Transfer to Thomas and Wong General Contractor" (the "Collateral Transfer

Agreement" or "Agreement").  Tarapaski Aff. ¶ 9; First Kallenbach Aff., [Docket No. 67] Ex. C.

The Collateral Transfer Agreement states:

> Please be advised upon the receipt of wired funds The Lake Bank will assign the
> following collateral to Thomas and Wong General Contractor.
>
> A second mortgage on Mr. Bea[r]dmore's Arizona home, the home is appraised at
> $2,000,000 with a first mortgage of $999,997.  Equity $1,000,000.
>
> A 1999 Mercedes and a 2000 18 ft. Mystic Ski Boat with a Shorestation and lift total
> value of $50,000.
>
> A 22% interest in Founders Mezzanine Stock Fund estimated value $150,000.
> [D]ividends in 2002 of $7,000.  Superior Financial Holdings, Inc. stock value $200,000.
>
> We understand the $500,000 wire will be transferred today.

1st Kallenbach Aff., Ex. C.  The Agreement concludes with an illegible signature on behalf of

"The Lake Bank NA."  Id.  Kell and Lance Schwanke, a commercial loan officer at Lake Bank

during the relevant time period, aver they are unfamiliar with the March 12, 2003, letter and do

not recognize the handwriting on the fax.  First Kell Aff., [Docket No. 77] ¶¶ 2-4; Schwanke

Aff., [Docket No. 73] ¶¶ 2-5.  The copy of the Collateral Transfer Agreement produced by

Thomas & Wong includes the facsimile number used by Lake Bank in March, 2003.  See

Beardmore Aff. ¶ 7.  Lake Bank's telephone records also reflect a one minute transmission on

March 12, 2003 from the Lake Bank fax number to the phone number of Wallace's place of

business.  Fourth Kallenbach Aff., [Docket No. 122] Ex. B, fourth page from the end of exhibit;

Third Kallenbach Aff., [Docket No. 87] Ex. B-1 at 75.

After Wallace received the faxed letter, Tarapaski avers he and Wallace discussed it with Kell. Tarapaski Aff., Ex. A at 166. Kell does not recall the conversation. Sixth Kallenbach Aff., Ex. I at 79-81. Later that day, Thomas & Wong wired $500,000 to the BDV account at Lake Bank. First Kallenbach Aff., Ex. D. At the time the $500,000 was wired to Lake Bank, Lake Bank retained possession of the Collateral Documents rather than delivering them to Thomas & Wong.

### D. BDV's Default and Resulting Litigation

BDV defaulted on the March 6, 2003, Thomas & Wong Note by failing to repay $1,500,000 and interest to Thomas & Wong by May 5, 2003. First Ball Aff., [Docket No. 74] Ex. 3 at BLU06782. In July 2003, Thomas & Wong commenced an action against BDV, but not against Beardmore, in New Mexico state court and obtained a writ of execution as to BDV providing for repossession of the gold doré located in New Mexico. See Fourth Ball Aff., [Docket No. 116] Ex. 5. In attempting to levy on the writ, Thomas & Wong discovered that the gold doré had been moved to Arizona. Second Ball Aff., [Docket No. 82] Ex. 1 at BLU04061.

On July 18, 2003, Thomas & Wong filed a complaint in Arizona state court against BDV, Beardmore, and others relating to loss sustained by Thomas & Wong under the Thomas & Wong Note. See id. Ex. 3. The Arizona complaint alleged that no monies had been paid to Thomas & Wong under the Thomas & Wong Note, and that the position of the Lake Bank had not been purchased. Id. Ex. 3 ¶ 12. Thomas & Wong alleged damages of "$1,500,000.00 as the amount due for the principal amount, plus the 25% interest of $375,000.000, plus $1,000,000.00 as the payment penalty plus $370,000.00 as liquidated damages through July 18, 2003 and $5,000.00 per day thereafter." Id. ¶ 23.1. On November 21, 2003, a default judgment (the "Default

Judgment") was entered in the Arizona state court action in favor of Thomas & Wong against BDV and others, but not against Beardmore, in the amount of $3,669,000.000. Id. Ex. 4. On January 6, 2004, Thomas & Wong assigned its Default Judgment to Richard G. Kirby ("Kirby). Fifth Ball Aff., [Docket No. 131] Ex. 13. On May 19, 2004 Thomas & Wong obtained a writ of general execution relating to the Default Judgment authorizing the amount due of $5,008,160.80 to be satisfied with the personal or real property of BDV and other judgment debtors.[3] Fourth Ball Aff., Ex. 6.

     Thomas & Wong also initiated litigation in Arizona state court against its former attorney, Gary Blume ("Blume"), and agent Wallace alleging breach of fiduciary duty and other claims relating to their representation of Thomas & Wong with respect to the Thomas & Wong Note and the Collateral Transfer Agreement. Id. Ex. 7. Thomas & Wong settled the action against Blume. Murphy Aff. [Docket No. 136] ¶ 2 . After the jury returned an unfavorable verdict against Wallace in Arizona state court, Wallace was granted a new trial which is scheduled to take place in early 2010. Id. ¶¶ 2-3.

     To date, Thomas & Wong represents that it has recovered $70,635 from the cases commenced against BDV in Arizona and New Mexico and against Blume. Tarapaski Aff. ¶ 15. The record does not specify the consideration received by Thomas & Wong in exchange for the assignment of the Default Judgment to Kirby. See Fifth Ball Aff., Ex. 13. At the hearing, counsel for Thomas & Wong represented that Thomas & Wong has been unable to locate the gold doré which had served as the collateral for the Thomas & Wong Note.

---

[3] The record is unclear and the parties have not addressed why Thomas & Wong was able to procure a writ of execution relating to the Default Judgment after the Default Judgment had apparently been assigned to Kirby.

**E.  Lake Bank's Delay in Delivering the Collateral Documents**

On September 5, 2003, Thomas and Wong's former attorney sent Lake Bank a letter

stating in part that:

> [d]emand is hereby made for your surrendering of the collateral
> detailed in the [March 12, 2003] letter from your bank to Jan
> Wallace. . . .  We would expect confirmation of your retention of the
> collateral and your intent to make these items available to my client
> for liquidation.
>
> . . .
>
> Without going into great detail, we have been led to believe that an
> attorney in Minnesota, Clark Griffin (sic) has been assisting BDV
> Investments in a transaction involving the bank.  We would request
> your sending us any documents relating to the transaction.  We are
> unsure of the transaction and whether or not we have some interest.
> In examining the letter from your bank, stock in Mezzanine Stock
> Fund and Superior Financial Holdings are listed and we would expect
> to receive those certificates.

Haugan Aff., Ex. 2.

Lake Bank responded that it "continue[d] to maintain collateral previously provided by

John Beardmore," but would not deliver it to Thomas & Wong or BDV "until both parties

agree[d] in writing upon a disposition of the subject collateral."  Id. Ex. 3.  Lake Bank requested

Thomas & Wong to execute an agreement releasing and indemnifying Lake Bank from potential

claims by Beardmore or others arising from Lake Bank's assignment of its interest in the

Beardmore Investment Collateral to Thomas & Wong.  See id. Ex. 4-6.  Thomas & Wong did not

execute a Release and Indemnification Agreement.

Lake Bank also sought direction from BDV as to where the Collateral Documents should

be delivered.  Id. Ex. 8 at BLU06743.  Lake Bank explained that it was reluctant "to transfer this

collateral to BDV, given its apparent pledge of this collateral to Thomas and Wong, and

alternatively, reluctant to send it directly to Thomas and Wong without written authorization to do so from BDV." Id.  The record does not indicate that BDV responded to Lake Bank's request for direction.

On May 21, 2004, Thomas & Wong provided Lake Bank with notice of the writ of general execution relating to the Default Judgment obtained by Thomas & Wong against BDV in November, 2003.  Id. Ex. 11.  Lake Bank delivered the Collateral Documents to Thomas & Wong on June 7, 2004.  Id. Ex. 12.

**F.  Thomas & Wong's Liquidation of the BDV Collateral**

On June 21, 2004, the Arizona real property was sold for $1,640,000.  First Kallenbach Aff., Ex. I.  At the time of the sale, the amount due on the first mortgage totaled $1,032,631 and delinquent real estate taxes were owed for the years 2001, 2002, and 2003 totaled $28,655.  Id. After payment of the first mortgage, taxes, sales commissions, and other settlement costs, Thomas & Wong received $332,914.58 in net sale proceeds from the Arizona real property.  Id.

Thomas & Wong's agent, Tarapaski, testified in his deposition that when he attempted to liquidate the Founders Mezzanine stock, he was informed that the stock had been sold. Tarapaski Aff., Ex. B at 205.  Tarapaski does not recall if he asked the stock fund manager the value of the stock.  Id. Ex. B at 205-06.  The record contains no evidence regarding the date Thomas & Wong attempted to liquidate the stock, the date the stock was sold, the value of the stock at the time of the sale, or the person or entity who received the sale proceeds.  Thomas & Wong also avers that the Superior stock had become worthless by the time Thomas & Wong received the Collateral Documents.  See Beardmore Aff. ¶ 19.

Finally, Thomas & Wong avers that the individuals in possession of the Mercedes, boat,

and lift would not surrender these items upon Thomas & Wong's request.  Tarapinski Aff. ¶ 12.

Thomas & Wong elected not to initiate a replevin action to recover these items because "it was

not economically feasible to do so."  Id.

### G.  Thomas & Wong's Alleged Damages

On February 7, 2006, Thomas & Wong initiated the instant litigation against Lake Bank.

The Complaint asserts claims for breach of contract, fraud, conversion, and bailee liability.

Thomas & Wong seeks $828,289 in damages from Lake Bank, based on the theory that Lake

Bank failed to timely deliver the Beardmore Investments Collateral and therefore is liable for:

(1) the alleged $360,000 decrease in value of the Arizona real property from March 12, 2003, to

June 21, 2004; (2) the $32,634 increase in the amount of the first mortgage from March 12,

2003, to June 21, 2004; (3) the tax delinquencies on the Arizona real property for the years 2001

through 2003, which total $28,655; (4) the alleged $357,000 decrease in value of the Superior

and Founders Mezzanine stocks from March 12, 2003, to June 2004; and (5) Thomas & Wong's

inability to realize any proceeds of the alleged $50,000 value of the Personal Property as of

March 12, 2003.

### III. DISCUSSION

### A.      Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall issue "if the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56; see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig, 54 F.3d at 470.  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     Thomas & Wong's Summary Judgment Motion**

Thomas & Wong argues for summary judgment based on theories of breach of contract, promissory estoppel, and unjust enrichment.  Alternatively, Thomas & Wong asks the Court to establish facts which are not in dispute pursuant to Fed. R. Civ. P. 56(d) and to preserve any disputed facts for trial.

To prevail on a breach of contract claim under Minnesota law, a plaintiff must prove the formation of a contract, performance by the plaintiff of conditions precedent, a material breach of the contract by the defendant, and damages.  See Briggs Transp. Co. v. Ranzenberger, 217 N.W.2d 198, 200 (1974).  Here, a material issue of fact exists as to the element of contract formation.  Lake Bank challenges the authenticity of the Collateral Transfer Agreement.  The facts supporting the challenge are that: Lake Bank's former president and commercial loan officer both aver that they are unfamiliar with the Agreement and do not recognize the signature at the bottom of the document, First Kell Aff. ¶¶ 2-4; Schwanke Aff. ¶¶ 2-5; the Agreement is not on Lake Bank's letterhead, First Kallenbach Aff., Ex. C; the Agreement is signed with an illegible signature, id.; and the Agreement is signed on behalf of Lake Bank generally.  Id. These facts, when viewed in the light most favorable to Lake Bank, create a genuine issue as to the authenticity of the Collateral Transfer Agreement, and therefore Thomas & Wong's summary

judgment Motion is denied.[4]

### C.     Lake Bank's Summary Judgment Motion

Lake Bank seeks summary judgment arguing that (1) even assuming *arguendo* the Collateral Transfer Agreement is authentic, it is unenforceable as lacking the essential terms and conditions of an assignment or collateral transfer agreement; (2) Thomas & Wong's commencement of multiple actions against different defendants in different jurisdictions results in claim splitting and a double recovery which precludes the present litigation; (3) Thomas & Wong cannot establish the essential elements of its claims; and (4) Thomas & Wong has refused to disclose information necessary to show that Thomas & Wong has standing as a Plaintiff in this action.

### 1.     Collateral Transfer Agreement's Terms and Conditions

Lake Bank argues that the purported Collateral Transfer Agreement lacks the essential terms and conditions of an assignment agreement generally recognized in the lending industry and is therefore unenforceable.  However, "no particular mode, form, or phraseology is necessary to effect a valid assignment."  Eric C. Surette, J.D. & Elizabeth Williams, J.D., 6A C.J.S. Assignments § 75 (2009).  See also Guaranty State Bank of St. Paul v. Lindquist, 304 N.W.2d 278, 280-81 (Minn. 1981) (stating that under Minnesota law, "no particular form of words is required").  "An assignment will be interpreted or construed in accordance with the

---

[4] Thomas & Wong also attempts to argue for summary judgment on theories of promissory estoppel and unjust enrichment which were not ple`d in the Complaint.  Any new theory not previously a subject of pleading and discovery is rejected at this late stage in the litigation.  See Shanahan v. City of Chicago, 82 F.3d 776, 780 (7th Cir. 1996) (denying plaintiff's attempts to amend his complaint through arguments in his brief opposing summary judgment).

rules of construction governing contracts generally, the primary object being to ascertain and carry out the intention of the parties." 6A C.J.S. Assignments § 86 (database updated June 2009). Under Minnesota law, if a contract's "terms can be reasonably ascertained in a manner prescribed in writing, the contract will be enforced." King v. Dalton Motors, Inc., 109 N.W.2d 51, 53 (Minn. 1961) (noting the law's disfavor for the destruction of contracts due to indefiniteness).

The terms of the Collateral Transfer Agreement are reasonably ascertainable: Lake Bank agrees to assign its interest in the Beardmore Investments Collateral specifically described in the Agreement to Thomas & Wong upon Thomas & Wong's wiring of $500,000 to Lake Bank.[5] First Kallenbach Aff., Ex. C. The absence of warranties and other standard conditions in the Collateral Transfer Agreement does not render it invalid; it simply means that such warranties or conditions are not provided. Thus, Lake Bank's Motion for summary judgment based on the invalidity of the Collateral Transfer Agreement is denied.

## 2. Claim Splitting and Double Recovery

Lake Bank next argues that the prohibition on claim splitting and double recovery bars the present action by Thomas & Wong, because Thomas & Wong has pursued and obtained relief in other jurisdictions against different defendants regarding the same set of circumstances.

Under Minnesota law, claim splitting is recognized as a valid defense only where the

---

[5] Both parties interpret the agreement to assign the Beardmore Investments Collateral as an agreement to assign Lake Bank's interest in the Collateral, and not the actual Collateral itself. See Def.'s Mem. of Law in Opp. to Summ. J. [Docket No. 130] at 33 (noting that "as of March 12, 2003 any interest which plaintiff would have had in the property would be a security interest, not a possessory interest"); Compl. ¶ 8 (alleging that Lake Bank made "representations that it would assign and transfer its creditor's interest in the property referred to" in the Collateral Transfer Agreement).

principles of *res judicata* have been satisfied. <u>Brown-Wilbert, Inc. v. Copeland Buhl & Co.</u>, 732 N.W.2d 209, 224 (Minn. 2007) (concluding "that the prohibition against claim splitting would support a dismissal with prejudice of the second claim only where the elements of *res judicata* are also present."). The elements of *res judicata* are met where "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privities; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." <u>Id.</u> at 220.

Here, at least two of the four *res judicata* requirements are lacking. First, Lake Bank was not a party to or in privity with a party to Thomas & Wong's earlier lawsuits naming BDV, Wallace, and Blume as defendants. Second, none of Thomas & Wong's earlier suits have resulted in a final judgment on the merits. The claims against BDV in Arizona and New Mexico both resulted in default judgments, the claim against Blume resulted in a settlement, and the claim against Wallace is scheduled for a new trial. Thus, because at least two *res judicata* elements have not been met, Lake Bank is not entitled to summary judgment on the basis of claim splitting.

Lake Bank further argues that the prohibition on double recovery precludes Thomas & Wong from asserting claims against different defendants in different jurisdictions to recover the same damages. "Double recovery occurs when separate theories of liability are premised on the same harm." <u>Bradley v. Hubbard Broadcasting, Inc.</u>, 471 N.W.2d 670, 677 (Minn. App. 1991) (citing <u>Wiring v. Kinney Shoe Corp.</u>, 461 N.W.2d 374, 379 (Minn. 1990)). However, the bar on parallel actions seeking to recover the same harm is only triggered when there "are two legal remedies for the same wrongful conduct." <u>Wiring</u>, 461 N.W.2d at 379. <u>See also</u> <u>Vesta State</u>

Bank v. Independent St. Bank of America, 518 N.W.2d 850, 856 (Minn. 1994) (allowing parallel litigation to proceed where "the parties are different, and the claims are distinct and require proof of quite different facts").

Here, the wrongful conduct alleged by Thomas & Wong is Lake Bank's failure to timely deliver the Collateral Documents. This conduct differs from the misconduct alleged against the other parties in other jurisdictions. In the New Mexico and Arizona actions against BDV, the wrongful conduct alleged was BDV's failure to timely repay the Thomas & Wong Note. In the actions against Blume and Wallace, the wrongful conduct was an alleged breach of fiduciary duty and other misconduct relating to the representation of Thomas & Wong with regard to the Collateral Transfer Agreement. Thus, the present action concerning Lake Bank's failure to timely deliver the Collateral Documents is not precluded by the doctrine against double recovery. Finally, there is no risk of a double recovery if the present action is not barred. The amounts recovered by Thomas & Wong must be treated as an offset in any subsequent recovery by Thomas & Wong. See Vesta State Bank, 518 N.W.2d at 856 (finding no risk of double recovery where settlement amount from prior claim is treated as an offset in recovery on a subsequent claim).[6]

### 3. Claim Elements

---

[6] Here, Thomas & Wong may have already recovered some of the harm it alleges it suffered under the Collateral Transfer Agreement. Thomas & Wong reached a settlement in the Arizona action against Blume in which Thomas & Wong alleged damages resulting from Blume's failure to perfect a security interest in the Beardmore Investments Collateral. See Fourth Ball Aff., [Docket No. 116], Ex. 7 ¶¶ 91-92, 101, 119-20. Thus, any amount Thomas & Wong is able to recover under the present action may be reduced by the amount of the settlement proceeds Thomas & Wong received from Blume, since both recoveries compensate Thomas & Wong for the harm allegedly caused by its inability to liquidate the Beardmore Investments Collateral.

Lake Bank also argues that it is entitled to summary judgment because Thomas & Wong has not met a prima facie burden of proof with respect to required elements of the claims pled in the Complaint. Analysis of each of the pled claims results in a granting of partial summary judgment in favor of Lake Bank as to the claim for bailee liability, and a limitation on Thomas & Wong's claimed damages due to the complete lack of evidence relating to certain damage categories.

### a. Breach of Contract

Lake Bank argues that the Collateral Transfer Agreement is not authentic and thus cannot be the basis for a breach of contract claim. However, Thomas & Wong's agents, Tarapaski and Wallace, both aver that the arrangement embodied in the Collateral Transfer Agreement was discussed with Kell on March 12, 2003, and Thomas & Wong has produced a copy of the Collateral Transfer Agreement bearing Lake Bank's facsimile number. The evidence presented by Thomas & Wong is sufficient to raise a genuine issue of material fact regarding the authenticity of the Collateral Transfer Agreement.

Lake Bank alternatively argues that, even assuming validity of the Collateral Transfer Agreement, Lake Bank is entitled to summary judgment because Thomas & Wong has not proven that its claimed losses were the natural and proximate result of Lake Bank's failure to timely deliver the Collateral Documents.

Under Minnesota law, the measure of damages for breach of contract is the amount of money that will place the non-breaching party in the same position as if the contract had not been breached. Wilhelm Lubrication Co. v. Bratrud, 268 N.W. 634, 636-37 (Minn. 1936). Damages that are remote and speculative may not be awarded. Hornblower & Weeks-Hemphill

Noyes v. Lazare, 222 N.W.2d 799, 803 (Minn. 1974). There is no test for what constitutes remote and speculative, and such determination is usually left to the judgment of the trial court. Jackson v. Reiling, 249 N.W.2d at 896, 897 (Minn. 1977). Additionally, "the proof required to support contract damages is similar to that of tort: the damages must result from (or be caused by) the breach." Nguyen v. Control Data Corp., 401 N.W.2d 101, 105 (Minn. App. 1987). "Generally, proximate cause is a question of fact for the jury; however, where reasonable minds can arrive at only one conclusion, proximate cause is a question of law." Bryan v. Kissoon, 767 N.W.2d 491, 495 (Minn. App. 2009).

The contract damages proximately caused by Lake Bank's failure to timely deliver the Collateral Documents are determined by comparing Thomas & Wong's current position with the position it would have been in had the Collateral Documents been delivered on March 12, 2003. Had Thomas & Wong been in possession of the Collateral Documents on March 12, 2003, the earliest it would have been entitled to liquidate the Collateral would have been May 6, 2003, the date BDV defaulted on the Thomas & Wong Note. Additionally, there is no evidence of record that Thomas & Wong made any effort to liquidate the Beardmore Investment Collateral before September 5, 2003, the date Thomas & Wong's then attorney, Blume, sent a letter to Lake Bank inquiring about the location of the Collateral Documents. See Haugen Aff., Ex. 2. In the letter, Blume requests documents relating to a transaction involving BDV Investments and Lake Bank and states that Thomas & Wong "would request your sending us any documents relating to the transaction. We are unsure of the transaction and whether or not we have some interest." Id. Had Thomas & Wong attempted to exercise its rights in the Beardmore Investments Collateral prior to September 5, 2003, it would have discovered Lake Bank's unwillingness to deliver the

Collateral Documents without first obtaining signed releases from Thomas & Wong and BDV. There is no evidence that Thomas & Wong attempted to liquidate the Collateral prior to September 5, 2003, therefore any loss suffered by Thomas & Wong from a decline in the value of the Beardmore Investment Collateral prior to September 5, 2003 was not proximately caused by Lake Bank's alleged breach of the Collateral Transfer Agreement.

Using September 5, 2003 as the starting point for damages proximately caused by Lake Bank's failure to deliver the Collateral Documents, the next issue is whether questions of fact exist regarding the amount of damages claimed by Thomas & Wong.

In regard to the Arizona real property, Thomas & Wong has presented no evidence that it would have obtained a higher sale price for the property if Lake Bank had delivered a quit claim deed earlier than June 7, 2004. The expert witness report relied on by Thomas & Wong values the Arizona real property at $1,500,000 to $2,000,000 in March of 2003. First Kallenbach Aff., Ex. H ¶ 7. The sale price of $1,640,000 realized on June 21, 2004 for the Arizona real property falls squarely within this range. An appraisal conducted for Lake Bank in September, 2002 estimated the Arizona real property's market value to be $2,000,000 conditioned on "a reasonable time for exposure in the open market." Id. Ex. 10 at 1. Only one comparable property sold in the same subdivision during the year preceding the September 2002 appraisal. Id. at 2. Any finding that the Arizona real property would have continued to be valued at $2,000,000 in September, 2003 and that Thomas & Wong would have obtained a higher sale price than that received in June, 2004 would be conjecture and speculation. Thus, Thomas & Wong is not entitled to the $360,000 in damages allegedly suffered as a result of Lake Bank's delayed delivery of the quit claim deed. The only evidence of recoverable damages relating to

the Arizona real property are the amounts by which the first mortgage and property taxes increased from September 5, 2003, when Thomas & Wong began taking steps to liquidate the Collateral, to June 7, 2004, when Lake Bank delivered the Collateral Documents. Whether the increased amounts are attributable to Lake Bank's alleged breach or, as Lake Bank argues, to Thomas & Wong's failure to mitigate damages is a fact issue for a jury to decide. See Marshall v. Marvin H. Anderson Constr. Co., 167 N.W.2d 724, 730 (Minn. 1969) (stating that it is "for the jury under the charge and the evidence submitted to consider mitigation of damages and to apply its judgment on that issue").

With respect to the Founders Mezzanine stock, Thomas & Wong has provided no evidence regarding when it attempted to liquidate the stock, nor has it disclosed the sale date, seller, purchaser, and sale price of the stock. In the absence of such evidence, it is impossible to determine whether the stock was sold before Thomas & Wong began its attempts to liquidate the Beardmore Investments Collateral on September 5, 2003.[7] If the stock was sold prior to that date, any loss suffered by Thomas & Wong is not attributable to Lake Bank's failure to timely deliver the Collateral Documents. Similarly, if the stock was sold after Lake Bank delivered the Collateral Documents, Thomas & Wong's loss would have been caused by its own delay in liquidating the stock, and not Lake Bank's delay in delivering the Collateral Documents. In summary, Thomas & Wong has failed to adduce evidence supporting a conclusion that Lake Bank's delay in delivering the Collateral Documents resulted in the loss Thomas & Wong alleges it sustained when the Founders Mezzanine stock was sold.

---

[7] Although Lake Bank possessed an Assignment and Control Agreement evidencing its security interest in the Founders Mezzanine stock, the record does not indicate that Lake Bank was in possession of the Founders Mezzanine stock certificates.

With regard to the Superior stock, a genuine issue of fact exists regarding whether Lake Bank's alleged breach resulted in the loss claimed by Thomas & Wong due to the decline in value of the Superior stock. The parties represent that Superior Financial Holdings, Inc. is a holding company whose primary asset is stock in Lake Bank. The value of the Superior stock is therefore determined with reference to the value of its primary asset, the stock in Lake Bank. Thomas & Wong has produced evidence indicating that the value of the stock may have declined from September 5, 2003 to June 7, 2004, due to Lake Bank's noncompliance with certain banking rules, regulations or procedures as specified in the Consent Order issued on March 20, 2003 by the Office of the Comptroller of the Currency for the U.S. Department of Treasury. See Second Kallenbach Aff., [Docket No. 79] Ex. 1.[8] Although Thomas & Wong has not shown the precise time and amount of decline in the value of the Superior stock during the relevant time period, damages need not be exact to be recoverable. Austin v. Rosecke, 61 N.W.2d 240, 242 (Minn. 1953) (stating that the law does not permit recovery of conjectural or speculative damages, but "does not require proof to an absolute certainty"). Additionally, Lake Bank is in the best position to produce evidence of the value of the Superior stock from September 5, 2003 to June 4, 2004. Accordingly, a fact issue exists regarding whether Lake Bank's alleged breach caused loss to Thomas & Wong due to Thomas & Wong's inability to liquidate the Superior stock between September 5, 2003 and June 7, 2004.

Finally, with regard to the Personal Property, Thomas & Wong has not shown that its

---

[8] The affidavit of John Beardmore avers that the Superior stock lost all value in December, 2003 when shares of Lake Bank were used to satisfy a delinquent loan owed by Superior Financial Holdings. Beardmore Aff. ¶ 19. Beardmore has provided no foundation for his knowledge of this transaction. Thus, his statement is not relied upon when conducting a damage analysis.

position was changed as a result of Lake Bank's delay in delivering the Collateral Documents. Under the facts presented, Thomas & Wong continues to hold a security interest in the Mercedes, boat, and lift, and Thomas & Wong has never attempted to repossess those items, because "it was not economically feasible to do so." Tarapaski Aff. ¶ 12. In addition, and contrary to Thomas & Wong's assertions, Lake Bank's alleged agreement to assign its interest in the Personal Property did not obligate Lake Bank to deliver the items themselves rather than the documentary evidence of their ownership. Thomas & Wong does not allege, nor does the record show, that Lake Bank represented to Thomas & Wong that it was in possession of or knew of the location of the Personal Property. Thus, no evidence exists to support Thomas & Wong's allegation that it suffered damages relating to its interest in the Personal Property, and that such damages resulted from Lake Bank's failure to timely deliver the Collateral Documents.

If the fact issue regarding the authenticity of the Collateral Transfer Agreement is resolved in favor of Thomas & Wong, the period for determining damages recoverable by Thomas & Wong as a natural and proximate result of Lake Bank's alleged breach of the Collateral Transfer Agreement begins on September 5, 2003, the date Thomas & Wong began its efforts to liquidate the Beardmore Investments Collateral. The record contains no facts which would create a genuine issue for trial regarding damages related to the sale price of the Arizona property, the Founders Mezzanine stock, and the Personal Property. Accordingly, Thomas & Wong's recovery of damages is limited to the increase in the amounts owed on the Arizona real property's first mortgage and property taxes and the decrease in the value of the Superior stock from September 5, 2003 to June 7, 2004, when Lake Bank delivered the Collateral Documents.

### b. Negligent or Fraudulent Misrepresentation

Lake Bank asserts that Thomas & Wong's claim for fraud or misrepresentation lacks the elements of reasonable reliance and proximate causation.

Under Minnesota law, a plaintiff must prove the following elements for fraudulent misrepresentation:

1.  a misrepresentation;
2.  the representation must be false;
3.  it must relate to a past or present fact;
4.  the fact must be material;
5.  the fact must be susceptible of knowledge;
6.  the representor must know that the fact is false or assert it    as of his own knowledge;
7.  the representor must intend to have the other person     induced to act or justified in acting upon the fact;
8.  the person must be induced to act or justified in acting upon the fact;
9.  the person's actions must be in reliance on the     representation;
10. the person must suffer damage;
11. the misrepresentation must be the proximate cause of the     injury.

Bloom v. Hennepin Co., 783 F. Supp. 418, 441-42 (D. Minn.1992).

Thomas & Wong alleges that Lake Bank fraudulently or negligently "misrepresented its present intention to assign, transfer and deliver its creditor's interest in the [Beardmore Investments] collateral to Thomas & Wong."[9]  Compl. ¶ 22.  Lake Bank argues that Thomas & Wong did not rely on this representation when it extended $500,000 under the Collateral Transfer Agreement, because Thomas & Wong had agreed to loan the funds the previous week when the Thomas & Wong Note was executed specifying gold doré as the collateral securing the

---

[9] Thomas & Wong has only recently advanced arguments Lake Bank: 1) misrepresented the value of the Superior stock, 2) misrepresented that it had possession of the Founders Mezzanine stock when it did not, and 3) did not reveal that it was unaware of the location of the car and boat.  Pl.'s Mem. of Law in Opp. to Def.'s 2d Summ. J. Mot., August 12, 2009 [Docket 127] at 21.  The Court will not consider new unpled allegations raised at this late stage.

Note.

However, there is evidence suggesting the Beardmore Investments Collateral may have played a role in Thomas & Wong's decision to extend funds to BDV. The Note specifies that some of the loan proceeds would "be used by BDV to purchase the position of The Lake Bank . . . which assets collateralizing the current loan at The Lake Bank will be assigned to BDV." Beardmore Aff., Ex. C. Beardmore similarly avers that a portion of the loan proceeds would be used to pay Beardmore Investments' indebtedness at Lake Bank, and that he advised Kell that the Collateral securing the indebtedness was to be assigned to Thomas & Wong. Id. ¶ 14. Additionally, Tarapaski avers that on March 12, 2003, Thomas & Wong's agent Wallace required Lake Bank to verify that the Collateral would be transferred to Thomas & Wong before Thomas & Wong would wire $500,000 to Beardmore's Lake Bank account. Tarapaski Aff. ¶ 9. Tarapaski further avers that Thomas & Wong would not have wired the funds in the absence of the Collateral Transfer Agreement. Id. Viewing this evidence in the light most favorable to Thomas & Wong, the Court finds an adequate factual basis to submit the question of reliance to a jury.

Lake Bank further argues that Thomas & Wong has not proven that it suffered damages as a natural and proximate result of Lake Bank's alleged misrepresentation, and that Thomas & Wong's method of determining damages is flawed. The proximate cause analysis used for Thomas & Wong's breach of contract claim similarly applies to Thomas & Wong's claim for fraudulent or negligent misrepresentation, because Minnesota law requires misrepresentation damages to "have a natural and proximate relationship to the claimed misrepresentation." Bryan, 767 N.W.2d at 495. See also Rosenquist v. Baker, 35 N.W.2d 346, 350 (Minn. 1949)

("Damages in an action for false representation and deceit are the natural and proximate loss sustained because of the reliance thereon.").  Thomas & Wong alleges that Lake Bank fraudulently or negligently "misrepresented its present intent to assign, transfer and deliver its creditor's interest in the [Beardmore Investments] collateral to Thomas & Wong."  Compl. ¶ 22.  Had Lake Bank delivered the Collateral Documents on March 12, 2003 as represented, the record lacks any evidence that Thomas & Wong would have attempted to enforce its creditor's interest prior to September 5, 2003.  Additionally, and for the same reasons set forth in the contract damages analysis, damages submitted to the jury for Lake Bank's alleged misrepresentation will be limited to the increase in the amounts owed on the Arizona real property's first mortgage and property taxes and the decrease in the value of the Superior stock from September 5, 2003 to June 7, 2004, when Lake Bank delivered the Collateral Documents.

Finally, damages proximately caused by Lake Bank's alleged misrepresentation will be limited to the out-of-pocket loss suffered by Thomas & Wong as a result of the misrepresentation.  Under Minnesota law, the "out-of-pocket rule" is used to determine damages which are the natural and proximate loss sustained by a party as a result of reliance on a misrepresentation.  Lewis v. Citizens Agency of Madelia, Inc., 235 N.W.2d 831, 835 (Minn. 1975); see also Peterson v. Johnston, 254 N.W.2d 360, 362 (Minn. 1977) (following the "out-of-pocket-loss" measure of damages for fraudulent misrepresentation); Fischer v. Division West Chinchilla Ranch, 310 F. Supp. 424, 430 (D. Minn. 1970) (using the "out-of-pocket" rule to determine the measure of damages awarded for fraudulent representation inducing a contract).  "Under this rule, it is not a question of what the plaintiff might have gained through the transaction but what was lost by reason of defendant's deception.  The loss is usually measured

as the difference between what plaintiff parted with and what he received." <u>Lewis</u>, 235 N.W.2d at 835 (citations omitted).[10]

Here, Thomas & Wong alleges that it wired $500,000 to Lake Bank in reliance on Lake Bank's representation that it would assign its security interest in the Beardmore Investments Collateral to Thomas & Wong. Assuming Lake Bank misrepresented its intent or ability to deliver the Collateral Documents, Thomas & Wong may not recover more than the out-of-pocket costs it sustained in reliance on the misrepresentation. Of the $500,000 extended to Lake Bank, Thomas & Wong has recovered $332,914.58 from the sale of the Arizona real estate. First Kallenbach Aff., Ex. I at 7. Thomas & Wong also continues to retain a security interest in the Personal Property identified in the Collateral Transfer Agreement. Thus, if Thomas & Wong is able to establish losses proximately caused by Lake Bank's fraudulent or negligent misrepresentation that it would assign the Collateral Documents on March 12, 2003 instead of June 7, 2004, Thomas & Wong's damages may not exceed $167,085.42, which is the remaining amount Thomas & Wong extended to BDV in reliance on the alleged misrepresentation.[11]

---

[10] <u>Lewis</u> involved a plaintiff who, after making payments on a purported life insurance policy, discovered upon the death of her husband that the policy was in fact an annuity policy. <u>Lewis</u>, 235 N.W.2d 831, 833. The <u>Lewis</u> court determined that the natural and proximate loss suffered by the plaintiff was the expected life insurance proceeds, and thus merely returning the plaintiff's policy premiums would not make her whole. <u>Id.</u> at 835. As a result, the <u>Lewis</u> court declined to apply the out-of-pocket rule, but limited its holding to the facts of the case. <u>Id.</u> The facts of the present dispute do not warrant a deviation from the out-of-pocket rule. Thomas & Wong alleges that it wired $500,000 to Lake Bank to satisfy the Beardmore Investments debt in reliance on Lake Bank's representation that it would assign the Beardmore Investments Collateral to Thomas & Wong. Limiting Thomas & Wong's recovery to the out-of-pocket losses naturally and proximately caused by the breach will return Thomas & Wong to the same position it would have been in had the alleged misrepresentation not been made.

[11] Any argument that Thomas & Wong is entitled to recover $700,000 in loan proceeds to Beardmore Investments in April that were disbursed in reliance on Lake Bank's representation that it would assign the Collateral is rejected. The disbursements were made at least three weeks

### c. Conversion

Lake Bank urges that Thomas & Wong's claim for conversion fails because it is based on the March 12, 2003 letter which is not authentic. For the reasons stated above, the Court finds that the authenticity of the March 12, 2003 letter is a genuine issue of material fact to be determined by a jury.

Lake Bank further argues that, even assuming the Collateral Transfer Agreement is valid, Thomas & Wong's conversion claim fails because Lake Bank's retention of the Collateral Documents was not inconsistent with the ownership rights claimed by Thomas & Wong.

Conversion is the exercise of dominion over personal property which is inconsistent with and in repudiation of the owner's right to the property or which deprives the owner of possession of the property permanently or indefinitely. Hildegarde v. Wright, 70 N.W.2d 257, 260 (Minn. 1955). "Wrongfully refusing to deliver property upon demand by the owner constitutes conversion." McKinley v. Flaherty, 390 N.W.2d 30, 32 (Minn. App. 1986). A defense to conversion exists where a defendant cannot deliver property to a plaintiff without possibly incurring liability from a third party. Id., at 33.

Lake Bank argues that its refusal to deliver the Collateral Documents was not inconsistent with the rights of Thomas & Wong, because the refusal was premised on the reasonable qualification that Thomas & Wong release and indemnify Lake Bank from claims which may be asserted by Beardmore or others as a result of Lake Bank's delivery of the Collateral Documents. Thomas & Wong replies that the qualification was not reasonable

_____

after Lake Bank was to have delivered the Collateral Documents and while Thomas & Wong's interests in the Collateral remained unperfected. Additionally, the $700,000 in funds were extended pursuant to the Thomas & Wong Note which was collateralized by the gold doré.

because Lake Bank had represented in the Collateral Transfer Agreement that it would assign the Beardmore Investments Collateral. Whether Lake Bank's qualification for delivery of the Collateral Documents was reasonable under the circumstances poses a fact question to be submitted to the jury. See Hildegarde, 70 N.W.2d at 260 (holding that, in a conversion action where defendant refused to deliver property to plaintiff without evidence of plaintiff's ownership, the trial court properly submitted to the jury the questions of whether the defendant's refusal was qualified, and if so, whether such qualification was reasonable).

Finally, Lake Bank argues that Thomas & Wong has failed to prove damages for conversion. The measure of damages for conversion of personal property is the value of the property at the time and place the plaintiff makes a demand. Mineral Resources, Inc. v. Mahnomen Construction Co., 184 N.W.2d 780 (Minn. 1971). The property alleged to be wrongly held by Lake Bank are the Collateral Documents evidencing security interests in the Beardmore Investments Collateral. Lake Bank uses May 19, 2004, the date of the writ of execution, as the date Thomas & Wong made its demand for the Collateral Documents. However, a reasonable juror could conclude that Thomas & Wong's first demand was made in Blume's September 5, 2003 letter stating that "[d]emand is hereby made for your surrendering of the collateral detailed in the [March 12, 2003] letter from your bank to Jan Wallace." Haugen Aff., Ex. 2. As discussed earlier, Thomas & Wong has not presented evidence that Lake Bank's delay in delivering the Collateral Documents resulted in damages relating to the sale price of the Arizonal real property, the Founders Mezzanine stock, or the Personal Property. Therefore, Thomas & Wong's damages, if any, under a conversion claim are limited to the difference in the

value of the Superior stock[12] and the accruals on the Arizona real property's first mortgage and property taxes from when Thomas & Wong first made its demand for the Collateral Documents to the time they were delivered.

### d. Bailee Liability

Lake Bank alleges that Thomas & Wong's bailee liability claim fails because Thomas & Wong has not shown establishment of a bailment relationship. The Court agrees. Thomas & Wong has provided no legal authority for its position that the relationship between Thomas & Wong and Lake Bank was one of a bailor and bailee, and the Court will not assume such a relationship based on Thomas & Wong's bare assertion that one exists. Summary judgment is granted in favor of Lake Bank as to Thomas & Wong's claim for bailee liability.

In sum, Lake Bank's Motion to dismiss Thomas & Wong's claims for failure to prove essential elements of the claims is denied with respect to the claims under breach of contract, fraud/misrepresentation of intention, and conversion, and granted as to the claim for bailee liability. Additionally, the only claimed damages supported by evidence raising a fact issue for trial are: 1) the increase in the amounts owed on the Arizona real property's first mortgage and property taxes from September 5, 2003 to June 7, 2004, and 2) the decrease in the value of the Superior stock from September 5, 2003 to June 7, 2004. Finally, Thomas & Wong may not claim misrepresentation damages exceeding its remaining out-of-pocket costs of $167,085.42 expended as a result of Lake Bank's alleged misrepresentation.

### 4. Standing

---

[12] "Where the value of the converted stock has gone down, most courts would agree that the measure of damages is the value at the time of conversion." Fawcett v. Heimbach, 591 N.W.2d 516, 521 (Minn. App. 1999) (quoting C.B. Higgins, Annotation, Measure of Damages for Conversion of Corporate Stock or Certificate, 31 A.L.R.3d 1286, 1290 (1970)).

Lake Bank argues that Thomas & Wong has failed to cooperate in discovery by not providing information concerning the existence and nature of its business, and that this information is relevant to whether Thomas & Wong has standing to bring the present action. The minimal constitutional requirements for standing are that a party must have suffered an injury in fact; the injury must be fairly traceable to the defendant's action; and the injury must be redressable by a favorable decision. Jewell v. U.S., 548 F.3d 1168, 1172 (8th Cir. 2008). Standing also imposes a prudential requirement that litigants must assert their own legal rights and not those of third parties. Id. Lake Bank does not explain how the nature of Thomas & Wong's business is relevant to an analysis of standing, nor does Lake Bank specify which of the standing requirements Thomas & Wong fails to satisfy. Thus, Lake Bank's request for summary judgment based on a lack of standing is denied.

### D. Thomas & Wong's Interest in the Beardmore Investments Collateral

While not directly raised by either party, serious issues of fact regarding Thomas & Wong's interest in the Beardmore Investments Collateral affect the underpinnings of the case. Assuming *arguendo* that the Collateral Transfer Agreement is authentic, the Agreement is not sufficient to provide Thomas & Wong with an enforceable security interest in the Beardmore Investment Collateral allowing Thomas & Wong to liquidate the Collateral upon BDV's default. "A valid assignment generally operates to vest in the assignee the same right, title, or interest that the assignor had in the thing assigned." Ill. Farmers Ins. Co. v. Glass Serv. Co., 669 N.W.2d 420, 424 (Minn. App. 2003), rev'd on other grounds, 683 N.W.2d 792 (Minn. 2004). Lake Bank's security interest in the Beardmore Investments Collateral secured Beardmore Investments' obligation to Lake Bank under several promissory notes. Beardmore Aff. ¶¶ 9, 13.

Therefore, the interest assigned by Lake Bank under the Collateral Transfer Agreement was a security interest in the Beardmore Investments Collateral which was enforceable against Beardmore Investments.  Thomas & Wong does not explain how this security interest could have been enforced against BDV upon BDV's default under the Thomas & Wong Note in the absence of a security agreement between BDV and Thomas & Wong.  See Minn. Stat. § 336.9-203(b)(3) (generally requiring a security agreement for a security interest to be enforceable against a debtor).  Beardmore's instruction to Lake Bank to assign the Beardmore Investments Collateral to Thomas & Wong may serve as indirect evidence of a security agreement between BDV and Thomas & Wong, and thus raise a genuine issue of material fact regarding whether Thomas & Wong had an enforceable security interest in the Beardmore Investment Collateral.  However, if the jury finds against Thomas & Wong on this issue, Thomas & Wong fails on all claims, because its damages would have been caused by its failure to properly obtain an enforceable security interest in the Beardmore Investments Collateral, and not by Lake Bank's action or inaction under the Collateral Transfer Agreement.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's Second Motion for Summary Judgment or in the Alternative for Partial Summary Judgment [Docket No. 119] is **DENIED**; and

2.    Defendant's Motion for Summary Judgment [Docket No. 113] is **GRANTED IN PART** and **DENIED IN PART**.  Counts One, Two, and Three of the Complaint [Docket No. 1] survive summary judgment, however damages will be limited in

accordance with this Order.  Count Four of the Complaint [Docket No. 1] is

**DISMISSED.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  December 1, 2009.